UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BILL SIEBERT,

    Plaintiff,

v.                                      Case No.:   2:18-cv-796-FtM-99MRM

NOVAK ENVIRONMENTAL SERVICES,
LLC.,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

Plaintiff, Bill Siebert, and Defendant, Novak Environmental Services, LLC, filed a Joint Motion to Approve Settlement and Dismiss with Prejudice. (Doc. 22). The parties attached a fully executed Settlement Agreement as Exhibit A to the motion. (Doc. 22-1). For the reasons below, the Undersigned respectfully recommends that the presiding United States District Judge **GRANT IN PART** and **DENY IN PART** the relief requested.

## **LEGAL STANDARD**

To approve the settlement of claims under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA"), the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised under the FLSA.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Id*. at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Lynn's Food*, 679 F.2d at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Lynn's Food*, 679 F.2d at 1353. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id*. at 1353-54.

The Eleventh Circuit has found settlements to be permissible when employees sue under the FLSA for back wages. *Id.* at 1354. According to the Eleventh Circuit:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

## CLAIMS AND DEFENSES

Plaintiff alleged in the Complaint that Defendant violated the FLSA by failing to pay him unpaid overtime compensation. (Doc. 22 at 1; Doc. 1 at 3-5 ¶¶ 14-26). "Although Plaintiff was compensated for some overtime, he alleges that additional overtime hours worked were not included in his compensation." (Doc. 22 at 2). Plaintiff asserted no other claims in the Complaint. (*See* Doc. 1). Defendant filed an Answer denying the allegations and asserting at least 29 affirmative defenses. (*See* Doc. 13). "Defendant contends that Plaintiff was

compensated for all overtime during his employment and that any hours Plaintiff claimed were either not compensable or not properly reported." (Doc. 22 at 3). Defendant also filed Counterclaims against Plaintiff for alleged breach of a restrictive covenant agreement, tortious interference with Defendant's business relationships, and breach of a duty of loyalty owed to Defendant. (Doc. 22 at 1; Doc. 13 at 9-18). Plaintiff filed an Answer to the Counterclaims, denying liability and asserting at least 6 affirmative defenses. (Doc. 17).

## ANALYSIS OF THE PROPOSED SETTLEMENT

In the motion *sub judice*, the parties explain that "[f]ollowing negotiations between counsel, the parties reached a settlement of all claims between them, including the FLSA claim." (Doc. 22 at 1-2). The parties "jointly represent that there are bona fide disputes between them as to both liability and damages regarding Plaintiff's FLSA claim." (*Id.* at 2). All parties and their counsel "agree and stipulate that the settlement represents a fair, reasonable, good faith and arms-length compromise." (*Id.*). The specific terms of the settlement are contained in a written Settlement Agreement, which is fully executed and attached to the parties' motion as Exhibit A. (*Id.*; *see also* Doc. 22-1).

Below, the Undersigned examines aspects of the Settlement Agreement (Doc. 22-1), the separately executed Non-Solicitation Agreement attached as Exhibit A to the Settlement Agreement (Doc. 22-1 at Ex. A thereto), and the parties' representations in the instant motion concerning both.

### A. Monetary Terms

The Settlement Agreement provides that Defendant will pay Plaintiff $4,500 for unpaid overtime wages and $4,500 in liquidated damages. (Doc. 22 at 3; Doc. 22-1 at 2 ¶ 6). The parties' motion explains that "[a]lthough this is less than the amount claimed by Plaintiff in his

3

FLSA interrogatories, it represents a significant percentage of the hours claimed, and the amount of hours represents a fair and reasonable compromise." (Doc. 22 at 3; *see also* Doc. 18 at 2-3, Answers to Court Interrogatories 4 and 6 (attesting that Plaintiff was paid $18.00 per hour and claims approximately 358 hours of unpaid overtime between February 17, 2017 and June 19, 2018)). The Settlement Agreement further provides that Defendant will pay $6,000 in Plaintiff's attorney's fees and costs. (Doc. 22 at 4). In all, Defendant has agreed to pay a total of $15,000 ($4,500 in unpaid wages + $4,500 in liquidated damages + $6,000 in attorney's fees and costs = $15,000) to resolve this litigation. (Doc. 22-1 at 2-3 ¶ 6).

The Undersigned finds that the monetary terms are a fair and reasonable resolution of the disputes in this case given, as the parties point out, that the $4,500 in unpaid wages being paid to Plaintiff "represents a significant percentage" of the hours Plaintiff claimed in response to the Court's interrogatories. (Doc. 22 at 3; *see also* Doc. 18 at 2-3, Answers to Court Interrogatories 4 and 6). The liquidated damages being paid are equal to the amount of unpaid wages being paid. (Doc. 22 at 3; Doc. 22-1 at 3 ¶ 6(a)-(b)). Under to 29 U.S.C. § 216(b), "[a]ny employer who violated the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." (Emphasis added). A court may – in its discretion – reduce or deny liquidated damages if the employer shows to the satisfaction of the court that the act or omission of failing to pay appropriate wages was in good faith and that the employer had a good faith belief that the act or omission was not in violation of the FLSA. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282 (11th Cir. 2008). Here, however, liquidated damages are to be paid consistent with § 216(b).

As it relates to the monetary terms of settlement, the Undersigned accepts and places great weight on the parties' recitals in the Settlement Agreement as reflecting a qualitative assessment by the parties and their counsel of the relative strengths and weaknesses of the FLSA-related claim and defenses asserted in the litigation, as well as the Counterclaims. Specifically, the Settlement Agreement states "[t]here are bona fide disputes between the Parties as to the Civil Action and Counterclaim, including but not limited to bona fide disputes as to the number of hours worked by the Plaintiff, the calculation of any potential overtime wages alleged owed to the Plaintiff, whether Plaintiff signed the restrictive covenant agreement in the Counterclaim and whether the Plaintiff has breached any duty to the Defendant." (Doc. 22-1 at 1, ¶ G). It also states the parties desire to settle the case "[i]n order to avoid the further costs, burdens and risks of litigation." (*Id.* at ¶ H).

In light of these considerations, the monetary terms of the proposed settlement appear to be a fair and reasonable resolution of the case.

### B. Attorney's Fees and Costs

As indicated above, the proposed settlement includes an agreement that Defendant pay Plaintiff's attorney's fees and costs in the amount of $6,000. (Doc. 22-1 at 3 ¶ 6(c)). The parties state in their motion that "[t]he attorney's fees and costs were negotiated separately and do not impact the amount of unpaid wages or liquidated damages paid to the Plaintiff." (Doc. 22 at 4).

As explained in *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), "the best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the

lawyer's fee has influenced the reasonableness of the plaintiff's settlement." In *Bonetti*, the Court concluded:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d at 1228.

In the instant case, a settlement was reached and the attorneys' fees were agreed upon without compromising the amount paid to Plaintiff. (Doc. 22 at 4). The Undersigned finds, therefore, that the proposed settlement of Plaintiff's attorney's fees and costs is reasonable and fair.

### C. Counterclaims and Non-Solicitation Agreement

The parties further explain that the proposed settlement includes a resolution of the Defendant's Counterclaims. (Doc. 22 at 4). According to the parties' motion:

> Those counterclaims arose from an alleged restrictive covenant agreement between Plaintiff and Defendant. Although the parties do not believe that Court approval of this settlement term is required, the parties represent that the settlement of this claim did not contaminate or undermine the settlement of the Plaintiff's FLSA claim. This claim was settled on nonmonetary terms. The Defendant employer agreed to a waiver of the non-compete restrictive covenant in exchange for the Plaintiff's agreement to the terms of a non-solicitation restrictive covenant. The terms of the non-solicitation restrictive covenant are set forth as an attachment to the Settlement Agreement for complete disclosure.

(Doc. 22 at 4; *see also* Doc. 22-1 at Ex. A thereto). Paragraph 7 of the Settlement Agreement states that "[i]n consideration of this Agreement and the mutual promises set forth herein, concurrent with executing this Agreement, the Plaintiff shall execute, and the Plaintiff agrees to

be bound by, the Non-Solicitation Agreement (the 'Non-Solicitation Agreement') in the form attached hereto as Exhibit 'A.'"  (Doc. 22-1 at 3 ¶ 7; *see also* Doc. 22-1 at Ex. A thereto).

The Non-Solicitation Agreement itself is fully executed by the parties.  (Doc. 22-1 at Ex. A thereto).  At base, the Non-Solicitation Agreement restricts Plaintiff for a period of one year from directly or indirectly soliciting any of Defendant's current clients.  (*Id.* at 1-2 ¶¶ 2(a)-(c)).  These restrictions do not apply to an entity identified as "Shady Acres."  (*Id.* at ¶ 2(b)).  Moreover, the Non-Solicitation Agreement states that Plaintiff "shall not be bound to any other restrictive covenants beyond the Non-Solicitation set forth" in the instant agreement.  (*Id.*).  The Non-Solicitation Agreement further provides that after the one-year period, and subject to a tolling provision elsewhere in the agreement, "this restrictive covenant shall automatically expire and there shall be no further restrictive covenants applicable to [Plaintiff]."  (*Id.* at ¶ 2 (c)).  It also contains a merger clause that states unequivocally that "[f]or avoidance of doubt, this Agreement supersedes and replaces any restrictive covenant agreement(s) [Defendant] signed at the commencement of or during his employment with [Defendant], including but not limited to the alleged restrictive covenant agreement at issue in [Defendant's] counterclaims."  (*Id.* at 4 ¶ 13).  These latter three provisions would appear to collectively supersede, moot, waive, release, and/or extinguish Defendant's Counterclaim premised on an alleged prior non-compete restrictive covenant between the parties.  (*See id.*).

As a threshold consideration, the Undersigned disagrees with the party's expressed view that their decision to include a contemporaneously executed Non-Solicitation Agreement as part of a global settlement does not require the Court's approval.  (Doc. 22 at 4).  The parties cite no legal authority to support their view.  The Undersigned believes that the wording of Paragraph 7 of the Settlement Agreement renders the Non-Solicitation Agreement an inextricable part of the

7

settlement and compromise of the FLSA claim because Paragraph 7 states broadly that the Non-Solicitation Agreement is being executed "[i]n consideration of this Agreement *and the mutual promises set forth herein*." (Doc. 22-1 at 3 ¶ 7 (emphasis added)). The Undersigned concludes, therefore, that the parties' agreement relating to the Non-Solicitation Agreement constitutes a non-cash concession tethered the global compromise of this case, including the compromise of the FLSA claim and the Counterclaims. Court approval is, therefore, required. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010) ("[A] non-cash, but still valuable, concession by an employee affects both the 'fairness' and the 'full compensation' component of a [FLSA] settlement.").

The parties have not cited to any legal authority addressing whether the contemporaneous execution of a Non-Solicitation Agreement as part of the global settlement of an FLSA claim and non-FLSA counterclaims can be deemed fair and reasonable under a *Lynn's Food* analysis. Nevertheless, the Undersigned finds that the circumstances of this case support a finding of fairness and reasonableness as to this significant non-cash concession by the Plaintiff. The Undersigned places great weight on the fact that the Plaintiff is represented by legal counsel known to this Court to have significant experience with litigation under the FLSA and employment litigation generally. Counsel avers that the settlement of Defendant's Counterclaims "did not contaminate or undermine the settlement of the Plaintiff's FLSA claim" and that what is represented here is a nonmonetary settlement of the Counterclaims wherein Defendant agrees to waive an alleged prior non-compete restrictive covenant in exchange for Plaintiff's agreement to the terms of the new Non-Solicitation Agreement. (Doc. 22 at 4). It is clear that the parties' agreement to the new Non-Solicitation Agreement – which was carefully negotiated by legal counsel – provides a mutual, reciprocal benefit. Plaintiff no longer faces or

has to defend against the significant Counterclaims. Defendant has a useful Non-Solicitation Agreement that Plaintiff has indisputably signed.

It also warrants emphasis that Defendant's Counterclaim is premised on the alleged existence of a non-compete agreement or non-competition restrictive covenant that allegedly contained *both* non-competition and non-solicitation provisions that appear to have been significantly more expansive than the limited restrictions that Plaintiff is willing to accept in the new Non-Solicitation Agreement. (*See* Doc. 13 at 10-11; *Compare id.*, *with* Doc. 22-1 at Ex. A thereto). For example, but without limitation, the new Non-Solicitation Agreement does not purport to restrict Plaintiff's ability to compete with Defendant, whereas the alleged prior agreement does. (*Id.*). Thus, the new, pared-down Non-Solicitation Agreement provides a considerable benefit to the Plaintiff when viewed against the more expansive non-compete agreement Defendant sought to enforce. (*See id.*). The parties do not expressly emphasize this point, but the Undersigned finds it to be significant in terms of assessing the fairness and reasonableness of the proposed global settlement.

Based upon all of the above considerations, the Undersigned finds that the mutual or reciprocal benefit of the Non-Solicitation Agreement and the certainty that it provides to the parties concerning their respective rights and obligations causes this aspect of the settlement to be fair and reasonable.

### D. Mutual General Releases

Additionally, the proposed settlement involves mutual general releases inuring to the benefit of both sides. (Doc. 22 at 4; Doc. 22-1 at 4-6 ¶¶ 8-12). The parties explain that such releases are appropriate in this case on the following rationale:

> Because this case involved competing claims and counterclaims, the parties' written Settlement Agreement includes comprehensive mutual general releases,

> with the consideration for each party's release being a reciprocal release. In view of the counterclaim and the dispute between the parties, reciprocal general releases equally benefit both parties and will provide certainty to both the Plaintiff and Defendant that all claims and disputes between them have been fully and finally resolved. Therefore, based on the circumstances of the case and the claims between the parties, the parties jointly request that the Court approve the language of the reciprocal mutual releases contained in the Settlement Agreement.

(Doc. 22 at 4). As to Defendant's general release, the Settlement Agreement states "The Parties expressly agree and understand that the release from the Defendant . . . shall not be applicable to the Non-Solicitation Agreement." (Doc. 22-1 at 6 ¶ 12).

The *Lynn's Food Stores* analysis necessitates a review of the proposed consideration as to each term and condition of the settlement, including foregone or released claims. *Shearer v. Estep Const., Inc.*, No. 6:14-CV-1658-ORL-41, 2015 WL 2402450, at *3 (M.D. Fla. May 20, 2015). The valuation of unknown claims is a "fundamental impediment" to a fairness determination. *Id.*; *see also Moreno*, 729 F. Supp. 2d at 1350-52. The Court typically "cannot determine, within any reasonable degree of certainty, the expected value of such claims." *Id.* Thus, the task of determining adequate consideration for forgone claims is "difficult if not impossible." *Id.* (citation omitted).

Additionally, this Court has found that general releases in FLSA cases are often unfair to plaintiffs. *See Moreno*, 729 F. Supp. 2d at 1351. Specifically, "[a]lthough inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA." *Id.* The Court has found that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer." *Id.* at 1352.

Notwithstanding this line of cases, however, other jurists have approved non-cash concessions in FLSA settlement agreements where they have been negotiated for separate consideration or where there is a reciprocal agreement that benefits all parties. *Bell v. James C. Hall, Inc.*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5339706, at *3 (M.D. Fla. Aug. 16, 2016), *report and recommendation adopted*, No. 6:16-cv-218-Orl-41TBS, 2016 WL 5146318, at *1 (M.D. Fla. Sept. 21, 2016); *Buntin v. Square Foot Mgmt. Co., LLC*, No. 6:14-CV-1394-ORL-37, 2015 WL 3407866, at *3 (M.D. Fla. May 27, 2015).

Here, the Undersigned accepts the parties' representation that "[i]n view of the counterclaim and the dispute between the parties, reciprocal general releases equally benefit both parties and will provide certainty to both the Plaintiff and Defendant that all claims and disputes between them have been fully and finally resolved." (Doc. 22 at 4). In particular, the presence of the Defendant's significant Counterclaims and the benefit to the Plaintiff embodied by the Defendant's release of those Counterclaims – with the exception of the Non-Solicitation Agreement – renders the mutual general releases in this case fair and reasonable. Both parties – represented by counsel – benefit from the certainty provided by the mutual general releases that all claims and disputes between them are fully and finally resolved, subject to any future dispute arising under the Non-Solicitation Agreement.

For these reasons, the Undersigned finds the proposed settlement to be fair and reasonable even though it includes mutual general releases.

### E. No Future Employment Provision

The proposed settlement also involves a "covenant not to reapply for employment." (*Id.* at 5). The parties ask the Court to approve this provision as fair and reasonable because:

> This covenant is agreeable to the Plaintiff and is a provision that is routinely included in the settlement of employment disputes outside of the FLSA context.

Because this settlement involves a broader dispute between the employer and the employee[,] the parties jointly request that the Court approve this provision as well.

(*Id.*; *see also* Doc. 22-1 at 2 ¶ 3). In this regard, Paragraph 3 of the Settlement Agreement provides:

> The Plaintiff agrees and acknowledges that the Plaintiff shall not in the future provide any services to, or be employed by, the Defendant. The Plaintiff further agrees and acknowledges that the Plaintiff will not knowingly accept, apply for, or otherwise seek employment with; or otherwise seek to perform services for, the Defendant, or any of the Defendant's subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time. In the event that the Plaintiff is inadvertently employed by any of the foregoing (including the provision of services as an independent contractor), then the Plaintiff understands and agrees that the Plaintiff will promptly resign from such employment and/or that the employing person or entity shall be entitled to involuntarily terminate the employment relationship without any legal exposure or liability.

(Doc. 22-1 at 2 ¶ 3).

The Undersigned finds that this provision is fair and reasonable when considered in context with the global resolution of this case. In particular, the Undersigned finds that Defendant's release of the Counterclaim premised on an alleged breach of a duty of loyalty owed to the Defendant (*see* Doc. 13 at 17) – which duty is not alleged to flow from any restrictive covenant – serves as sufficient consideration for the Plaintiff's agreement not to accept or seek employment from the Defendant in the future.

### F. Reservation of Jurisdiction

Lastly, the parties "jointly request that the Court retain jurisdiction for a period of thirty (30) days to enforce the terms of the Settlement Agreement." (Doc. 22 at 3 (citing *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1280 (11th Cir. 2012)). The parties make no effort to justify this request. The Undersigned finds no grounds for retaining jurisdiction in this case, especially given that the Settlement Agreement required the settlement amount to be tendered to Plaintiff's counsel more than a month ago on June 1, 2019 and the short window

provided in the Settlement Agreement for Plaintiff to revoke the settlement has also long expired. (*See* Doc. 22-1 at 2-3 ¶ 6 and 8 ¶ 22(e)-(f)). No party has filed anything with the Court indicating that Plaintiff revoked the Settlement Agreement or that any other party has failed to tender payment or otherwise perform under the Settlement Agreement.

Accordingly, the Undersigned recommends that the Court decline to reserve jurisdiction to enforce the settlement agreement.

## CONCLUSION

For all of these reasons, the Undersigned finds that the proposed settlement is a fair and reasonable compromise of the claims asserted in this litigation.

Accordingly, the Undersigned respectfully **RECOMMENDS** that:

1) The Joint Motion to Approve Settlement and Dismiss with Prejudice (Doc. 22) be **GRANTED** to the extent it seeks the Court's approval of the Settlement Agreement (Doc. 22-1), but **DENIED** to the extent it requests that the Court retain jurisdiction.

2) The Court decline to retain jurisdiction over this case.

3) If the presiding District Judge adopts this Report and Recommendation, then the Clerk of Court should be directed to dismiss this action with prejudice, terminate all pending motions, and close the file.

Respectfully **RECOMMENDED** in Chambers in Fort Myers, Florida on July 7, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties